1  Roberta Steele, Regional Attorney
   U.S. Equal Employment Opportunity Commission
2  450 Golden Gate Avenue
   5 West, P.O Box 36025
3  San Francisco, CA 94102-3661

4  John F. Stanley, Supervisory Trial Attorney
   Amos B. Blackman, Senior Trial Attorney
5  U.S. Equal Employment Opportunity Commission
   909 First Avenue, Suite 400
6  Tel: (206) 220-6930
   Fax: (206) 220-6911
7  Email: amos.blackman@eeoc.gov

8  *Of Counsel*:
   John Fonstad
9  Assistant U.S. Attorney
   District of Alaska
10
   ATTORNEYS FOR PLAINTIFF
11

12             IN THE UNITED STATES DISTRICT COURT

13               FOR THE DISTRICT OF ALASKA

14  U.S. EQUAL EMPLOYMENT            )
    OPPORTUNITY COMMISSION,          )
15                                   )
                   Plaintiff,        )
16  v.                               )
                                     )
17  CLUB DEMONSTRATION               )
    SERVICES, INC.,                  )
18                                   )
                   Defendant.        )     Case No.
19  _____ )

20
                          **COMPLAINT**
21                      **AND JURY DEMAND**
    (Title I of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12111–12117)
22

23                      NATURE OF THE ACTION

24      This is an action under Title I of the Americans with Disabilities Act, as amended,

42 U.S.C. § 12101 *et seq.* ("ADA"), and Title I of the Civil Rights Act of 1991, Pub. L. 102-166, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Terry Baker, who is adversely affected by such practices. Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC") alleges that Defendant, Club Demonstration Services, Inc. ("Defendant"), violated the ADA when CDS: (1) did not make reasonable accommodations to the known physical limitations of Baker, an otherwise qualified individual with a disability, and (2) constructively discharged Baker from her employment on the basis of her disability.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, as amended, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1), (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Alaska.

## PARTIES

3.  Plaintiff, the United States Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1), (3).

4.  At all relevant times, Defendant, Club Demonstration Services, Inc., has

1  been a Connecticut corporation employing more than 500 employees in each of twenty

2  (20) or more weeks in 2017, registered with the State of Alaska, and doing business in the

3  City and Borough of Juneau, Alaska.

4       5.      At all relevant times, Defendant has continuously been an employer

5  engaged in an industry affecting commerce under Sections 101(2) of the ADA, 42 U.S.C.

6  § 12111(2), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by

7  reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g)–(h).

8       6.      At all relevant times, Defendant has been a covered entity under Section

9  101(2) of the ADA, 42 U.S.C. § 12111(2).

10                          ADMINISTRATIVE PROCEDURES

11      7.      More than thirty (30) days prior to the institution of this lawsuit, Baker filed

12 a charge of discrimination with the EEOC alleging that Defendant denied her reasonable

13 accommodation of her disability and constructively discharged her on the basis of

14 disability, in violation of the ADA.

15      8.      By letter dated December 20, 2018, the EEOC issued to Defendant a

16 Determination finding, *inter alia*, that Defendant denied Baker reasonable

17 accommodation of her disability and constructively discharged her on the basis of

18 disability, in violation of the ADA, and invited Defendant to join with the EEOC in

19 informal methods of conciliation to endeavor to eliminate the discriminatory practices

20 and provide appropriate relief.

21      9.      The EEOC engaged in communications with Defendant to provide

22 Defendant the opportunity to remedy the discriminatory practices described in the

23 Determination.

24      10.     The EEOC was unable to secure from Defendant a conciliation agreement

1  acceptable to the EEOC.

2       11.     By letter dated March 18, 2019, the EEOC issued to Defendant a Notice of

3  Failure of Conciliation, notifying Defendant of the EEOC's determination that efforts to

4  conciliate Baker's charge had been unsuccessful and that further conciliation efforts

5  would be futile or non-productive.

6       12.     All conditions precedent to the institution of this lawsuit have been

7  fulfilled.

8  STATEMENT OF CLAIMS

9       13.     Since at least June 14, 2017, Defendant has engaged in unlawful

10  employment practices in violation of Section 102(a) of Title I of the ADA, 42 U.S.C.

11  § 12112(a). Defendant discriminated against Baker when it did not make reasonable

12  accommodation to her known physical limitations and when it constructively discharged

13  her from her employment on the basis of disability, in violation of Section 102(a) of the

14  ADA.

15       14.     Baker is a qualified individual with a disability who, under Sections 3 and

16  101(8) of the ADA, 42 U.S.C. §§ 12102, 12111(8), can perform the essential functions of

17  Defendant's position of part time sales advisor with reasonable accommodation:

18       a.     Since 2015, when a nerve was severed during surgery for spinal

19       stenosis, Baker has had neurogenic bladder and history of cauda equina

20       syndrome, which cause urinary incontinence. These conditions

21       substantially limited the operation of Baker's major bodily function of

22       bladder function, and substantially limited the major life activities of

23       standing, walking, and riding transportation.

24       b.     Due the resulting urinary incontinence, Baker had to make frequent

use of the restroom to empty her bladder and/or change into a clean pair of diapers.

    c.     Baker was qualified for the part time sales advisor position, as demonstrated by CDS's continued employment of her from May 2016 until September 2017.

    d.     The essential job functions of a part time sales advisor employed by CDS are to demonstrate and explain products to members of Costco Warehouse Corporation ("Costco"), answer Costco member questions about the products, and to prepare, transport, and clean the carts used for the demonstrations.

    e.     Baker was and is able to perform these essential job functions with the reasonable accommodation of bathroom breaks as needed.

15.    Baker began working for Defendant on or about May 6, 2016 at Costco Warehouse 107 in Juneau, Alaska.

16.    From May 2016 until approximately June 2017, Baker took bathroom breaks as needed to use the toilet and/or change into a clean pair of diapers due to the urinary incontinence caused by her condition of neurogenic bladder and cauda equina syndrome.

17.    In or around June 2017, Baker's manager informed Baker and her co-workers that they were no longer permitted to use the bathroom other than during their lunch break or their scheduled 15-minute break.

18.    On or shortly after June 6, 2017, Baker submitted a doctor's note to Defendant requesting that Baker be allowed to use the restroom as much as needed due to a medical condition.

1    19.    On or about June 14, 2017, the doctor's note was routed to Defendant's

2    Human Resources Generalist ("HRG") for the North West – Alaska region.

3    20.    Later that same day, the HRG wrote a letter to Baker, stating that that

4    Defendant was "unable to provide [her] with an accommodation at this time because it

5    would pose an undue hardship to the company and/or necessitate the elimination of

6    essential job functions of [her] position."

7    21.    Defendant did not engage in an interactive process with Baker or propose

8    an alternative accommodation before issuing this letter denying her request for

9    accommodation.

10    22.    Taking bathroom breaks as she needed to due to her disability would not

11    have prevented Baker from fulfilling the essential functions of her job.  A bathroom

12    break takes only a few minutes including the time to secure her demonstration, so even a

13    number of such breaks per shift would not have prevented Baker from promoting and

14    explaining products to Costco members, answering their questions, and preparing,

15    transporting, or cleaning her demonstration cart. This is demonstrated by, among other

16    things, Baker satisfactorily fulfilling her duties from May 2016 until her manager

17    implemented the bathroom policy in or around June 2017.

18    23.    Because Defendant did not make reasonable accommodation to Baker's

19    disability, Baker was forced to wear multiple diapers at a time to avoid leaking urine on

20    the floor when she wet herself, and even then, on occasion, her diapers became so

21    saturated that urine leaked, but she could not change them until a scheduled break.  In

22    addition, Baker would not drink anything during her shift to avoid exacerbating the

23    problem, against her doctor's advice to drink water regularly.

24    24.    It was physically uncomfortable and deeply humiliating to Baker to be

1  forced to work in wet diapers.

2      25.    On or about July 8, 2017, Baker complained to Defendant that her request

3  for accommodation had been denied.

4      26.    Baker's complaint was routed to the same Human Resources Generalist that

5  had denied her request for accommodation.

6      27.    On or about July 10, 2017, in anticipation of a procedure that she hoped

7  would enable her to self-catheterize, Baker inquired with the HRG about the possibility

8  of bathroom breaks every two (2) hours, which might lessen the physical discomfort and

9  humiliation she had to endure until she was able to self-catheterize.

10      28.    On or about July 11, 2017, Defendant's HRG verbally reiterated to Baker

11  that she would not be accommodated.

12      29.    On or about July 14, 2017, Baker nonetheless submitted a doctor's note

13  requesting bathroom breaks every two (2) hours, which specifically noted that she had an

14  upcoming appointment that might result in a decrease in the frequency with which she

15  would need to use the bathroom, a reference to the possibility that Baker might soon be

16  able to self-catheterize.

17      30.    On or about July 27, 2017, Defendant's HRG informed Baker in writing

18  that Defendant would not accommodate her.

19      31.    Nonetheless, in or around August 2017, in anticipation of being able self-

20  catheterize, Baker worked with her manager such that her manager would give Baker the

21  first break available, which gave her a break approximately every two hours and lessen

22  the physical discomfort and humiliation she had to endure until she was able to self-

23  catheterize.

24      32.    Baker's manager knew that this arrangement was ineffective in preventing

1  Baker from wetting herself, and nonetheless did not to give her permission to take

2  additional bathroom breaks.

3       33.     Over time, Baker's manager increasingly failed to provide even this

4  informal arrangement, failing to give Baker the first break available which forced Baker

5  to work longer than two hours between bathroom breaks.

6       34.     Baker was not able to able self-catheterize as soon as she had expected, and

7  she had no choice but to keep wearing diapers and continue to wet herself at work

8  through September 2017.

9       35.     Due to the multiple written denials she received from Defendant's HRG,

10  Baker knew that it would be futile to again request a reasonable accommodation of

11  bathroom breaks as needed.

12       36.     Baker had competently, diligently, and reasonably sought reasonable

13  accommodation of her disability for over three (3) months, all while continuing to fulfill

14  her job duties despite the extraordinary and egregious circumstances of being forced to

15  work through the physical discomfort and deep humiliation of wearing urine-soaked

16  diapers.

17       37.     By September 19, 2017, Baker could no longer endure these extraordinary

18  and egregious working conditions.

19       38.     On or about September 20, 2017, Baker submitted a doctor's note to

20  Defendant stating that Baker could not continue working for Defendant without more

21  frequent restroom breaks.

22       39.     At the time she submitted this note, Defendant did not inform Baker that

23  she could request medical leave in lieu of discharge.

24       40.     Defendant terminated Baker's employment effective September 24, 2017.

1     41.     On or about September 28, 2017, Baker recalled that Defendant had

2  previously informed her that she may be eligible for medical leave, and she contacted

3  Defendant's HRG and other managers to inquire as to whether she could apply for

4  medical leave.

5     42.     Defendant's HRG informed the other managers that Defendant would not

6  allow Baker to apply for medical leave in lieu of her discharge, but Defendant never

7  informed Baker of its decision.

8     43.     Since at least June 14, 2017, and continuing until Baker's termination,

9  Defendant did not make reasonable accommodation to Baker's disability in violation of

10  Sections 102(a) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. § 12112(a), (b)(5)(A).

11     44.     On or about September 24, 2017, Defendant constructively terminated

12  Baker in violation of Sections 102(a) and 102(b)(5)(B) of Title I of the ADA, 42 U.S.C.

13  §§ 12112(a), (b)(5)(B).

14     45.     The effect of the practices complained of in paragraphs 13 through 44

15  above has been to deprive Baker of equal employment opportunities and otherwise

16  adversely affect her status as an employee because of her disability.

17     46.     The unlawful employment practices complained of in paragraphs 13

18  through 44 above were intentional.

19     47.     The unlawful employment practices complained of in paragraphs 13

20  through 44 above were committed with malice or with reckless indifference to Baker's

21  federally protected rights.

22                              PRAYER FOR RELIEF

23     Wherefore, the EEOC respectfully requests that this Court:

24     A.     Grant a permanent injunction enjoining Defendant, its officers, servants,

1  employees, attorneys, all persons in active concert or participation with it, and successors,

2  from engaging in any employment practice that discriminates based on disability.

3  B.    Order Defendant to institute and carry out policies, practices, and programs

4  which provide equal employment opportunities for qualified individuals with disabilities,

5  and which eradicate the effects of its past and present unlawful employment practices.

6  C.    Order Defendant to make Baker whole by providing appropriate back pay

7  with prejudgment interest, in amounts to be determined at trial, and other affirmative

8  relief necessary to eradicate the effects of its unlawful employment practices described in

9  in paragraphs 13 through 47 above, including reinstatement of Baker with the reasonable

10 accommodation of bathroom breaks as needed.

11 D.    Order Defendant to make Baker whole by providing compensation for past

12 and future pecuniary losses resulting from the unlawful employment practices described

13 in paragraphs 13 through 47 above, in amounts to be determined at trial.

14 E.    Order Defendant to make Baker whole by providing compensation for past

15 and future non-pecuniary losses resulting from the unlawful employment practices

16 described in paragraphs 13 through 47 above, including emotional pain, suffering,

17 inconvenience, mental anguish, and other nonpecuniary losses, in amounts to be

18 determined at trial.

19 F.    Order Defendant to pay punitive damages for its malicious and reckless

20 conduct, as described in paragraphs 13 through 47 above, in amounts to be determined at

21 trial.

22 G.    Grant such further relief as the Court deems necessary and proper to the

23 public interest.

24 H.    Award the EEOC its costs of this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by this Complaint.

DATED May 8, 2019.

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSSION
Attorneys for Plaintiff

ROBERTA L. STEELE
Regional Attorney

JAMES L. LEE
Deputy General Counsel

JOHN F. STANLEY
Supervisory Trial Attorney

GWENDOLYN Y. REAMS
Associate General Counsel

AMOS B. BLACKMAN
Senior Trial Attorney

U.S. Equal Employment
Opportunity Commission
Seattle Field Office
909 1st Avenue, Suite 400
Seattle, Washington 98104
Telephone (206) 220-6930
Fax: (206) 220-6911
Email: amos.blackman@eeoc.gov

U.S. Equal Employment
Opportunity Commission
Office of the General Counsel
131 "M" Street NE
Washington, D.C. 20507

By:     /s/ Roberta L. Steele
Roberta L. Steele
Regional Attorney

*Of Counsel:*

JOHN FONSTAD
Assistant U.S. Attorney
United States Attorney's Office – District of Alaska
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
Email: John.Fonstad@usdoj.gov